UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MAAGDENBERG,<br>    Plaintiff,<br>v.<br>UNIVERSAL.ONE, et al.,<br>    Defendants. | Case No. 21-cv-07398-DMR<br><br>**ORDER ON MOTION TO COMPEL ARBITRATION**<br>Re: Dkt. No. 24 |

Plaintiff Robert Maagdenberg filed this action against his former employer Universal.One and Universal Health and Wellness Corp. (together, "Universal") alleging violations of the Fair Labor Standards Act and the California Labor Code. Universal now moves to compel arbitration and dismiss the case. [Docket No. 24.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the court grants the motion and administratively closes this action pending the decision of the arbitrator.

**I.  BACKGROUND**

    **A.  Allegations in the Complaint**

Universal is a "company that sells digital platforms to healthcare providers and insurance companies." Compl. ¶¶ 2, 3. It hired Maagdenberg in November 2018 as a "business systems analyst" in San Francisco. Maagdenberg alleges that even though he was "not exempt from the hourly overtime requirements under federal and state laws" and worked over eight hours per day and 40 hours per week, Universal did not pay him daily or weekly overtime. He further alleges that he did not receive uninterrupted lunch or rest breaks during his shifts and that Universal failed to maintain and keep time records documenting his hours worked. Compl. ¶¶ 8-11. Universal terminated Maagdenberg's employment in August 2021. *Id.* at ¶ 12. The complaint alleges five claims for relief under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and various

provisions of the California Labor Code.

### B. The Arbitration Agreement

At the time it hired Maagdenberg, Universal used a third party recruiter to find candidates for employment and communicate with them during the hiring process. [Docket No. 24-3 (Claasen Decl., Jan. 13, 2022) ¶ 4.] In November 2018, Universal made a written offer of employment to Maagdenberg through the recruiter. *Id*. at ¶ 5, Ex. A. Maagdenberg received the offer letter via email from the recruiter on November 18, 2018. [Docket No. 25-2 (Maagdenberg Decl., Feb. 2, 2022) ¶ 3.] He signed and dated the offer letter on November 19, 2018 and returned it to the recruiter, who forwarded it to Universal. Claassen Decl. ¶ 5, Exs. A, B (offer letter); Maagdenberg Decl. ¶¶ 2, 3, Ex. A.

The offer letter is three pages long and contains an arbitration provision:

> To ensure the timely and economical resolution of disputes that may arise in connection with your employment with the Company, you and the Company agree that any and all disputes, claims, or causes of action arising from or relating to the enforcement, breach, performance, negotiation, execution, or interpretation of this letter agreement, or your employment, or the termination of your employment, including but not limited to all statutory claims, will be resolved, to the fullest extent permitted by law, by final, binding and confidential arbitration conducted by JAMS or its successor, under JAMS' then applicable rules and procedures for employment disputes (available upon request and also currently available at http://www.jamsadr.com/rules-employment-arbitration/). **By agreeing to this arbitration procedure, both you and the Company waive the right to resolve any such dispute through a trial by jury or judge or administrative proceeding. . . .**

Offer Letter at 3 (emphasis in original).

The offer letter also contains a delegation clause which provides that "[q]uestions of whether a claim is subject to arbitration under this agreement) [sic] shall be decided by the arbitrator." *Id*.

Universal now moves to compel arbitration, arguing that Maagdenberg's claims in this action are "barred from proceeding in this Court by the binding Arbitration Provision in [the] Offer Letter." Mot. 1.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Enacted for the purpose of enforcing written arbitration agreements according to their own terms, the FAA embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Section 4 of the FAA ensures that "'private agreements to arbitrate are enforced according to their terms,'" *Stolt–Nielsen*, 559 U.S. at 682 (quoting *Volt*, 489 U.S. at 479), by expressly authorizing a party to an arbitration agreement to petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The final clause of § 2, generally referred to as the savings clause, permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4).

"In deciding whether to compel arbitration under the FAA, a court's inquiry is limited to two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If both conditions are met, '*the* [FAA] requires the court to enforce the arbitration

3

agreement in accordance with its terms.'" *Id.* (quoting *Chiron*, 207 F.3d at 1130). Parties may delegate gateway issues of arbitrability to the arbitrator if they "clearly and unmistakably" agree to do so. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017).

### III. DISCUSSION

Universal argues that the FAA governs Maagdenberg's claims and that the arbitration provision in the offer letter contains a "delegation" clause by which it expressly delegated questions of arbitrability to the arbitrator. Therefore, Universal argues, the court should compel the arbitration of this action and dismiss the case. It also argues that the arbitration provision is valid, enforceable, and covers Maagdenberg's claims in this action.

Maagdenberg does not dispute that the FAA governs this dispute. He also does not dispute that he signed the offer letter containing the arbitration provision or that the claims alleged in the complaint are covered by the arbitration provision to the extent that it is enforceable. Instead, Maagdenberg argues that the arbitration provision is procedurally and substantively unconscionable and thus unenforceable. For example, he argues that the arbitration provision is procedurally unconscionable because it is a contract of adhesion that was "a take-it-or-leave-it proposition" and he had no ability to negotiate its terms, among other things. He argues that the arbitration provision is substantively unconscionable because it requires confidentiality and the JAMS rules governing any arbitration are vague, uncertain, and improperly limit discovery. Opp'n 5-12.

Maagdenberg does not challenge the delegation clause, which provides that "[q]uestions of whether a claim is subject to arbitration under this agreement) [sic] shall be decided by the arbitrator." Instead, he takes issue with the validity of the entire arbitration provision. Where a party's arguments are directed not to "the delegation provision specifically" but to the validity of the agreement to arbitrate claims "as a whole," the court "must enforce" the delegation clause and "leav[e] any challenge to the validity of the [a]greement as a whole for the arbitrator." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72-73 (2010). *See Brennan v. Opus Bank*, 796 F.3d 1125, 1132-33 (9th Cir. 2015) (where plaintiff "failed to 'make any arguments specific to the delegation provision,'" court "need not consider" claim that arbitration clause in an employment

4

agreement was unconscionable "because it is for the arbitrator to decide in light of the parties' 'clear and unmistakable' delegation of that question" (quoting *Rent-A-Center*, 561 U.S. at 73-75)).

Here, Maagdenberg does not dispute that the parties "clearly and unmistakably" intended to delegate the power to determine arbitrability of a claim to the arbitrator. Accordingly, the court must enforce the agreement according to its terms and compel the issue of arbitrability of Maagdenberg's claims to arbitration. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (court was "required to enforce . . . agreements 'according to their terms'" and "compel the issue of arbitrability of Plaintiffs' claims to arbitration" where "delegation provisions clearly and unmistakably delegated the question of arbitrability to the arbitrator for all claims").

Universal also moves to dismiss the action or in the alternative, to stay the action in its entirety pending the completion of arbitration proceedings. Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, although the Ninth Circuit has held that courts have discretion under Section 3 to dismiss claims that are subject to an arbitration agreement. *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988). The court finds it appropriate to stay this action pending the outcome of the parties' arbitration proceedings. For case management reasons, the court will accomplish this by administratively closing the case. To reopen the case, the parties are directed to file a joint status report within two weeks of the completion of any arbitration.

## IV. CONCLUSION

For the foregoing reasons, the court grants Universal's motion to compel arbitration and stays this action in its entirety pending the final resolution of the arbitration. The clerk shall administratively close the case. The parties may reopen the case by filing a joint status report within two weeks of the completion of any arbitration.

**IT IS SO ORDERED.**

Dated: March 28, 2022

_____
Donna M. Ryu
United States Magistrate Judge

5